Mr. Bok, when you're ready. Yeah. That's all right. Thank you. Take your time. Get ready. Good to have you with us. May please record Eric Bok of Charlotte, North Carolina, representing the appellant, Mr. Rakestraw, the defendant in this case. In this case, Mr. Rakestraw was originally represented by the federal public defender of the Western District of North Carolina and entered a plea of guilty to four counts in this case. And counsel was substituted. I represented Mr. Rakestraw at a sentencing hearing in this case where he was sentenced by the Honorable Robert Conrad of Charlotte, North Carolina, where what had happened was prior to the sentencing hearing, he had what he was represented by the federal defender's office. He had been sent to Florida for a competency evaluation. That report is part of the sealed portion of the record in this case that Mr. Rakestraw was only partially cooperative with the evaluator in this case. The evaluator felt that Mr. Rakestraw was competent to go forward in this case, and that was the report that was tendered in this case. That report occurred approximately one year prior to his sentencing in this case, that what occurred in this case is shortly before his sentencing hearing that Mr. Rakestraw had a suicide attempt at the local jail where he attempted to hang himself. His counsel at the time had not been able to see him because there had been the incident of there had been a COVID lockdown of his entire pod, so I wasn't able to meet with him. Then he had the suicide attempt. I contacted the legal department of the sheriff's department. George Geis, who actually is a former assistant U.S. attorney for the Western District of North Carolina, could not give me detailed information because of the time of the suicide attempt. You were his lawyer. That's correct, Your Honor. And you'd been appointed by the Western District of North Carolina. That's right. As a panel attorney after the personal conflict of interest with Mr. Rakestraw in that case. Those appointments were made not by the judge personally, but by an office in the clerk's office? It's by the defender's office. They have someone. You're on the panel. That's right. I'm a panel attorney. You're a panel attorney, but who selects the panel attorney? The defender's office. The defender's office. That's right. But they were conflicted out. That's the reason I'm asking you. That's correct, Your Honor. They went with someone who's on the panel. Judge Conrad didn't have anything to do with pointing. Correct. That's correct. The defender's office, they're conflicted out. That's all I wanted to know, really. What had occurred is I talked to... Mr. Geis had informed me that there had been a suicide attempt by Mr. Rakestraw, that they had taken this as a legitimate attempt, that they had taken him to the local hospital, Carolinas Medical Center, to have him evaluated by the psychological unit there and brought him back to the jail. Mr. Geis told me that he couldn't provide me records without having a HIPAA release form signed, but due to the restrictions they had, I was not able to see him without getting a... Is all this in the record, or are you testifying? This is all in the record, Your Honor. This was in the sentencing transcript, and also I filed a motion to continue related to this with Judge Conrad. So I'd ask at the time of sentencing to have a motion to continue his sentencing hearing and also have him re-evaluated since there was an issue of staleness of that prior competency hearing, since that had occurred approximately one year beforehand in this case. And looking at the case law in this case, the two controlling cases are the cases of United States versus General and United States versus Mason. Mason is the older case, but really has what I would consider the most meaningful analysis on this issue from 1993. Mr. Bakken, you said the controlling cases. These are the controlling cases about whether to order a competency hearing, right? That's correct, Your Honor. And whether... They're not cases about whether to order a continuance. That's correct, Your Honor. And that's how we framed this in our brief was that it was hereby the court of not ordering a further competency hearing to have Mr. Rickstraw evaluated prior to going forward with his sentencing hearing. So that was... Thank you. You've sort of examined the question. I'm looking at your brief and I'm looking at your brief and I'm not seeing an argument that the district court committed... I understand you've definitely preserved the argument that the court should have ordered a competency hearing and you preserved the argument that the sentence is too long, it's a bad sentence. But I'm looking at your appellate brief and I don't see an argument that the district court committed a separate legal error in not granting a continuance. And I guess I would just like to give you an opportunity to convince me that I'm wrong about that. No, Your Honor. I felt that those two issues were co-mingled together, the continuance and the issue of having him evaluated for competency. And so I asked the judge not to go forward with the sentencing hearing until he could be evaluated for competency. So I felt that those two issues were co-mingled. So that's the way I tried to argue that in the brief. I didn't really see those as two separate issues since... What you wanted was an evaluation. That's correct. You want a follow-up evaluation because he tried to commit suicide while in custody. That's correct, Your Honor. Before he was sentenced. That's correct, Your Honor. The judge turned it down. That's right. And that's a question that we review for abuse of discretion. That's correct, Your Honor. And do you contend that the judge committed any legal error or misapprehended the facts, the material facts? I mean, those would constitute, per se, arguably, abuses of discretion if the judge didn't understand the facts or if he didn't understand the law. Yes, Your Honor. Our argument was that he didn't apply the proper legal standard in this case that we'd introduced... Legal standard to what? Of when to order another competency evaluation in this case. We'd argued that under the statute that we'd introduced additional facts to the court since that past evaluation and that under the statute... What was there beyond the fact that he tried to commit suicide? He was facing sentencing and he tried to take his life while he was in jail. Was there something beyond that that you presented to the judge? Do you support that request for a competency hearing? Do you want a competency hearing or a competency evaluation and a hearing? Both, right? We wanted a competency evaluation and then a hearing after that. That's right. But our argument was that... Your Honor, if you wanted him sent to the butler, probably, did you not? A prima facie showing that the defendant wasn't currently competent to go forward with the sentencing hearing that we'd introduced new facts since that last competency hearing that the defendant needed to be further evaluated and also to have the medical records at the jail evaluated by a medical expert, which obviously, I'm not a medical expert and Judge Conrad isn't a medical expert on this issue of competency to have it evaluated since this is new facts. And I think the facts in our case really distinguish it from a lot of the cases in the police brief where we're not just talking about the opinion of defense counsel, but there's actually an intervening psychological case, which is basically similar to what you see in the Mason case where... But before we get there, Mr. Brock, and excuse me, shouldn't you have teed it up better for Judge Conrad? Shouldn't you have moved for another competency evaluation and argued that it couldn't take place until you got these records, that you needed to get these records to further evaluate it? I'd only been able to meet with the claim within 24 hours of the sentencing hearing. But you said you were going to, I think, wasn't there evidence in the record that you indicated you were going to file a motion for competency evaluation, but you didn't do that. You moved for a continuance. Yes. And ask Judge Conrad at the hearing to order a competency evaluation at the hearing. Okay. And certainly, it was a situation where only being able to meet with my client within 24 hours of the hearing for the first time within three weeks to the issue of the fact that I had no access to him due to the fact that the jail wouldn't allow access due to the fact that they had him under COVID seclusion and then under suicide watch. They wouldn't let you see your client? That's correct. For a three-week period of time. That's correct, Your Honor. Now, that is... The record supports that? That's correct, Your Honor. I placed that in the motion to continue and also brought that up at the sentencing hearing to Judge Conrad. That's correct. How'd you establish the fact you hadn't been able to see your client? You just told him that or did you... Do you have jail records where they turned you away? How'd you prove that? I dropped that in the motion to continue and put that in the... Told that to Judge Conrad at the sentencing hearing. You put it on the record when you spoke and you put it in a written motion for continuity? That's correct, Your Honor. So you made a written motion for continuity? That's correct, Your Honor. And I'm trying to look at the sentencing transcript to see where you actually asked for the competency hearing, but neither here nor there for now. We have to look and see whether there was something at the sentencing that came forward that would have required Judge Conrad to stop everything and order that second evaluation. So what did you provide him other than, as Judge King pointed out, just the fact that there had been a suicide attempt? Did he let you speak to your client? And I think he even said, you haven't told me anything else other than suicide, but I'll take that at face value, he said. So you were able to talk to your client. Was there something that indicated he wasn't able to assist you in his defense, assist you for sentencing purposes? Was there something else that you should have told Judge Conrad? Because he seemed to be asking for that. I told him that I'd only been able to meet with him for this brief period of time that related to Judge Conrad that I hadn't been able to review the medical records, that I would be able to get the medical records in a short period of time, but that from the little bit of time available to meet with my client, I had concerns about his competency and that he did not seem as stable as he did beforehand. I tried to relate that to Judge Conrad. Obviously, this is a fairly brief sentencing hearing. But he said, I'm going to let you argue everything you want to argue, and I'm going to let Mr. Regashaw address me in any manner he wants. And in fact, he did. And you all discussed about, you know, how he was getting his life together and wanted to do better by his child and those sorts of things. But Judge Conrad did say, you know, I'll let you make your argument. But right now, all I've been told is there was this suicide attempt. And then he paused. You all took a break for you to talk to your client further. I'm just asking, did you offer anything else in terms of how Judge Conrad was to determine whether another competency hearing was required? Basically, what's in the record is what we offered in that case. I was able to just talk to the client. If it's unclear from the record, that was a very brief conversation of about 90 seconds just at the defense table, just as if I was talking to a client right here for 30 to 40 seconds. That's the only time you were able to talk to him? You were able to access him in the jail at all? I had one meeting at the jail with him. Did you go there every day and try to see him? He was on suicide watch. So they wouldn't let you see your client? Except for this one meeting. That's correct, Your Honor. Except for one time? That's correct. Did you present that to Judge Conrad and argue that? Yes, I did, Your Honor. And I did. Obviously, it's hard to kind of put this clearly, but I did contact his... Did you tell Judge Conrad that he was denied effective counsel and you couldn't properly represent him or anything because you were denied access to him? Yes, and I placed that in the motion to continue that I filed. And it also did relate that, obviously, this is hard to put in the record, but we did contact his law clerk through chambers of the fact that I had these concerns about the ability to go forward on this issue. Mr. Buck, if we decide that... Not to affirm Judge Conrad, do we have to make a finding that every suicide attempt requires a competency evaluation? I think that's what is a concern I have. Is that what we would be required to find? That the fact that there had been a suicide attempt means that a second evaluation must be ordered. And particularly, I'm concerned about it where we have a previous evaluation where not only did the examiner find that there wasn't a competency issue, but ultimately at that guilty plea colloquy, the defendant sort of abandoned the challenge to it. So I'm just asking, if we don't affirm, are we necessarily finding that evidence of a suicide attempt means, you know, sui sponte or whatever, the court must order a mental evaluation? No, I don't think so, Your Honor, because I made it clear in the motion and also this is clearly in the record that I would be able to get records from the sheriff's department a very short period of time within seven days. So I think certainly you could craft an order that certainly the district court could have some other remedies. They could have reviewed those medical records themselves to see if there's a good faith basis to order another evaluation beforehand to go. Where was the first evaluation made? Were they in Charlotte or did they send him away? They sent him away to Florida, Your Honor. Florida. But that was- I thought they did them here next to Raleigh, Butler. I believe that the hospital in Charlotte is the judge signs an order and then the Bureau of Prisons decides where it is available. So often it's- Did you want him sent away again or do you just want him to see the psychiatrist down the street? I just wanted to have a proper evaluation done because I would have even been satisfied if the judge would have just authorized funding for a licensed psychologist to see him at the jail as far as a contact because obviously there's been, because of COVID, some complications and being able to do that adequately at the jail at that time. Were you concerned about his ability to cooperate with his lawyer or understand the nature of the proceedings and that kind of thing? Yes, I did have- Did you tell the judge you were concerned about his competency to understand what was going on and to assist you in representing him? Yes, Your Honor, I- You did? You told the judge that? Yes. Some of that is that I had followed up with his chambers of having these concerns and which I know it's hard to document that always in the record. You called the law clerk one time, you said. That's correct, Your Honor. That's no record of that. That's not in his record. That's correct, Your Honor, because that's something that's just difficult to document. Which I've said, you're sort of the lawyer here today and you're the witness as to what went on. I'm trying to distinguish between that and what the record is. Yes, Your Honor. Because there's no question that this is a, we review what Judge Conrad did in the context of for abuse of discretion. He has discretion to act one way or another on a request for continuance or on a request for competency. And he has to abuse the discretion before we can do anything about it. And he abuses the discretion if he makes a legal error, if he doesn't understand the facts. But we've got to give him deference. We've got to defer to him. Even if I'd been the sitting judge at the time, I could say, well, I'd probably send him away for an exam, certainly. But that wouldn't mean that we ought to reverse Judge Conrad at all. He was the sentencing judge. It was up to him. And we defer to him. Your Honor, I just want to- He's been through these criminal cases. He's had thousands of criminal cases. He was a prosecutor for 15, 20 years. He's been a judge for 25 years. No, Your Honor. I would not argue with his experience. I just would argue that with the motion, with only being able to see my client 24 hours before this hearing, or actually, I think it was less than 24 hours, that I filed a motion to document what the issues were and followed that up with the judge the next morning in court. I just feel that that adequately raised this issue and argued that that's enough evidence if you apply the case law- And the judge denied it and imposed the sentence. Right? Judge denied your motion and he imposed the sentence. That's correct, Your Honor. And you're also complaining about the sentence. Yes, Your Honor. How was he prejudiced? If he made a mistake, if the judge made a mistake, how was your client prejudiced by it? On count one, my client was a category six and Judge Conrad sentenced him well above his guideline range. And we'd argue that if you look at the case law in this circuit, that that's an increase without giving the defendant any notice that he had any intent to depart upward and do a variance to that level. And we'd argue that if you look at the case of an unreasonable variance, this conforms to unreasonable variance in this case. Of course, notice wasn't required because the variance was based on evidence that was well known to both sides. Correct? Your Honor, I just argue that that's a factor that you can look at, but we framed the argument mostly, if you look at the case law, just on the reasonableness of that variance. You see, the facts were terrible in this case. Just egregious facts. I mean, carjacks, a family and parents trying to get the child out of the car before he leaves with the car, and he leaves nevertheless with the child. It's in a high speed chase, car flips. He goes running off, baby's left in an upside down car. I just argue that the sentence that was enhanced wasn't the carjacking sentence. So, I'd argue that sentencing my client so harshly on the sentence that doesn't even involve the carjacking, especially when he also received an enhanced sentence on the 924C count, which was above what most defendants receive on the 924C, which is generally the 60-month sentence, that he was already receiving severe sentences. And so, that did make, we're only appealing count one. And so, we would argue that on the count one sentence, that is unreasonable when he's already a category six. And that was the basis that Judge Conrad stated was his prior record level. And I think if you look at the case laws we cited in our brief, this is similar to the cases that we did show of this being an unreasonable variance on the 924C. So, I don't want to spend a great deal of extra time. We've asked you a lot of questions. Why don't we give you a break and see what Mr. Enright has to say about this. He may agree with you on a lot of it. Thank you, Your Honor. May it please the court. I apologize. I don't think I'm going to be able to make it quite that easy on this. Our position is the district court acted within its discretion and certainly did not plainly err by declining to order a second competency evaluation. Well, how would it be plain error if he made the motion and it was denied? We wouldn't review it for plain error. We'd be reviewing it for abuse of discretion. That's correct. He preserved it. If he made a motion for a competency evaluation, but he did not. He didn't. Okay. He explicitly told the court on page 125 of the record, I will be drafting a competency motion on Wednesday. He said that on Wednesday night of the prior week. And then in the district court, he told the court, he made a motion to continue and told the district court at the sentencing hearing, there's a motion to continue pending and I want to be heard on that. He gave reasons. One of which he said is a potential competency issue based only on the suicide attempt. I do want to correct the record to the extent my friend says that he told the court that he had reasons to doubt his ability to communicate with him or to understand the proceedings. He did not represent that to the court. It is not in the sentencing transcript. It's the first I've Well, that's the fact that he couldn't see his client for three weeks. Your honor, he told the court that, so I mean, that doesn't sound very good to me. Well, I think the court credited the fact that his representation, that he was, he was in some kind of lockdown for the two weeks prior to the sentencing hearing, but the Mr. Bach represented to the court that he had met with him twice before the sentencing hearing. And the district court gave him an opportunity to recess, to meet with him is talk to Mr. Bach about what he was prepared to say about sentencing and assess that he was prepared. Mr. Bach represented that he had prepared a very cogent sentencing memorandum based on what he had learned from his client. And to, to speak to a point, those heightens mentioned Mr. Bach hasn't argued in his appellate brief that the district court acted outside of his grant a continuance. He has argued that the court was required to grant a competency hearing based on the evidence. Well, can the, the, the motion for a continuance to be fairly construed as for a continuance and a competency evaluation? I don't think so. Your honor. Strew it liberally with me. I don't think you have in the circumstances construed liberally or not. The defendant was very explicit. He's got court appointing council and he's been denied access, which doesn't, you know, you're getting close to saying the government's saying he didn't get effective counsel. I don't think so. You are. I mean, you're getting on the edge. I don't think so at all. Your honor. I don't think there's a basis for competency evaluation here. And that's all I'm saying is you're, you take the position. There was no competence or no request for a competency evaluation made. That's and in, but he made a competent, a continuous motion. That's true. That's, that's factually accurate. Well, it couldn't, I'm not asking if the comp, if the, what you call the continuous motion can be interpreted as a request for both things, a continuance and the comp for a competency evaluation. I don't think it must be interpreted because if it can, it's not reviewed for plain error. It's, it's reviewed straight up as being preserved and denied. If this court interprets what Mr. Bach did, preserving a competency request, then it's subject to the abuse of discretion. Well, that might be a, that's another question. And that'd be your, you may well be right. They didn't abuse discretion, but you're saying that the lawyer didn't do his job. I know that he, that he knew that the guy had competency problems and rather than raise them with the court, he abandoned the competency problem. Really? You were, you said he didn't ask for a competency evaluation. That's when you stood up. He didn't preserve it. Reviewed for plain error. I'm saying that because it's factually accurate. I'm not suggesting anything. I hope it's factually accurate. That's the way we ought to treat it. I agree. I don't agree. I don't, what I'm not saying is that I'm not casting any judgment on counsel. I think, I suspect Mr. Bach's disadvantage is that suicide, a suicide. I think a reasonable thing for a lawyer to do if a client tries to commit suicide while awaiting sentencing in jail is to move for a competence, move for continuance and move for a competency evaluation. That's, those are absolutely two steps that should be taken and it ought to be taken promptly. They ought to be taken promptly and they ought to be taken together. And then the court denies it, that we review it for abuse of discretion and go on. But it definitely should be made to protect the client. As a matter of fact, if he didn't make it, the government probably should. So you, the interest of justice. Your honor, you guys have obligations too. That is true, your honor. And I recognize however, that the competency standard is not satisfied by a suicide attempt. This court has repeatedly said. But it raises question. This jumps off the page. Not under these circumstances. Well, you and I'll disagree on that. That's entirely fair, your honor. I think under any standard, even if this were entirely preserved and were under the abuse of discretion standard, the district court asked defense counsel, what are the facts that raise any issue of competency to you? And the only one is that he attempted suicide on the eve of. So the judge asked him about the competency issue. Yes, your honor. Preserved. Discussed. Pardon me, I understand. Discussed by the judge and the lawyer. I've always read the rule to require it to be raised by counsel, but I won't quarrel with your honor anymore because I feel like under any standard. Well, it could be interpreted as being raised by the judge sua sponte. It certainly could be. And judge Conrad's type of judge would do that. He absolutely would. I do think a defense counsel has to turn some corners or square some corners to ask this court to reverse that determination, one of which is preserving the issue properly. But I don't think this court needs to go that far to resolve this appeal in our favor because it's well within the district court's discretion. The district court did consider and took it face value. It took defense counsel's representations as true. I understand he made a decision. The judge accepted that. Judge accepted that. And what the court said is that doesn't establish competency. And he's does the so he understood exactly. Judge did on the record here what was going on, and he considered it, denied it. Absolutely. And then so you go to the merits, and he says he erred in sentencing. I do. I'll certainly talk about sentencing. I don't think the court erred at all. I think the court acted well within its discretion in posing a sentence. It was an upward variance of about 30 months. However, the facts of the case were extraordinary, not taken into account. They were egregious and also egregious in a way not taken into account fully by the guidelines. The guidelines take into account the abduction of a child, but not subjecting that child to it. Did you all ask for more than a higher sentence, a greater sentence than what he got? We asked for a lower sentence than what he got. We asked for 235 months. He received 230. So you would have given him more of a break? We would get well. I think we asked for the top of the guideline range. I think 235 is maybe one month above the top of the guideline range. It might be just a title. But yes, we asked for a lower sentence than the court imposed. But ultimately, it's the court's decision, and the court explained exactly why. These facts are egregious and beyond what the guidelines take into account. The guidelines take into account that you might steal a gun, but they don't take into account that he stole it while committing a domestic violence assault of his former girlfriend. The guidelines take into account that you might carjack a car, but not under the particularly violent circumstances that the witness described during the pre-sentence report where he was smashed against the window multiple times, gun put to his chest, and threatened with death. They take into account that you can abduct a child but not subject him to gross indifference to human life that the court did. And the guidelines also understate the court reasonably concluded that they understate the seriousness of his criminal history. He had more than 15 prior convictions. Nine of them didn't receive any criminal history points. And all those combined well justify, well authorize the court to exercise discretion to impose 264-month sentence. So I don't know if this court wants me to return to the issue of the competency hearing. Let me ask my colleagues if they have any further questions. I don't know. We have addressed the subject in our brief, so no more questions. Unless you have something else, unless you have something else that you want to say, we don't have any further questions. Then I have, then I will yield the balance of my time back to the court and ask the court to affirm the district court's judgment. Thank you very much. Yes, Mr. Bok. Now you've saved three minutes. Thank you, Your Honor. I just asked why, just if it wasn't a mistake on my part, not to argue the continuous issue more strongly in the brief, just not to prejudice my client on that. Just with gravity, with issues being so commingled, it seemed to me that arguing this as the competency issue made the most sense, especially the way that some of the cases, like the Mason case, stated the fact that this competency issue, it could be raised even after the hearing day. So we just ask the court to consider applying a similar rationale to the way the court applied that in the Mason case. And on the second issue about account one, I just would again emphasize the fact that that account didn't involve the Karjakin case and just the fact that my client already was that category six, and that is such a substantial increase of the sentence that he already would receive and just would argue that his criminal history category is actually fairly typical of someone who's a category six. I don't think that if you looked at the people who the probation officers calculated as a category six, that his criminal history actually is any different than people who are at that category, just since the majority, he was actually at 13 criminal history points, which is at the bottom level of category six, not at the top of category six. And we just ask the court to consider that in looking at this issue of the reasonableness of increasing his sentence so far above his guideline, right? Thank you, your honor. Yes, sir. Thank you, Mr. Bach. We appreciate it. And I want to, Mr. Bach, your court appointed, and I want to thank you for your service to the legal system in representing Mr. Raxall. Without lawyers like you, we're unable to do our work, but we expect you to do it well and aggressively, and you knew how to do that. You're experienced, and I thank you for your service. And if we weren't for the pandemic and the situations, we'd come down right now and greet the lawyers and thank you personally and shake your hands, but we can't do that now because we're not doing it now. But anyway, next time we'll go through that process, I'm sure. And Madam Clerk, with that, we will take this case under advisement, and we will adjourn court until tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Toby J. Heytens, Sherri A. Lydon